**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8
9    UNITED STATES OF AMERICA,
10            Plaintiff,                    No. CR 05-0125 PJH
11        v.
                                           **ORDER GRANTING DEFENDANT'S**
12                                         **SECOND MOTION TO SUPPRESS**
     KENNETH KELLEY,
13            Defendant.
14   _____/
15
16       Defendant Kenneth Kelley's ("Kelley") second motion to suppress came before the
     court for a hearing on July 13, 2005.  Having considered the parties' arguments, the papers,
17   the exhibits, and the relevant authorities, the court hereby GRANTS Kelley's motion.
18                              **INTRODUCTION**
19
         The issue before this court is whether the government's February 9, 2005 search
20   warrant affidavit and application contained sufficient indicia of probable cause to search
21   Kelley's residence, including his home computer, for child pornography on February 10, 2005.
22   Following that search, on March 3, 2005, Kelley was indicted for violation of 18 U.S.C. §
23   2252A(a)(2), possession of child pornography, and § 2252A(a)(5)(B), receipt of child
24   pornography.
25       The motion currently before the court is the second motion to suppress filed by Kelley.
26   On June 17, 2005, this court suppressed the fruits of a previous January 2005 search of
27   Kelley's AOL account, concluding that the affidavit supporting the search warrant application
28   lacked sufficient indicia of probable cause, and that the information contained

**United States District Court**
For the Northern District of California

1  in the affidavit, which was nearly one year-old, was stale.  The court further held that the good

2  faith exception to the exclusionary rule pursuant to *United States v. Leon*, 468 U.S. 897

3  (1984) did not apply.

4        The information contained in the November 23, 2004 search warrant application

5  leading to the January 2005 search, the fruits of which this court suppressed, is also present to

6  a large degree in the February 2005 search warrant affidavit at issue here.  Moreover, the new

7  information in the February 2005 application is very similar, if not identical, in nature to the

8  information relied on by the government in the November 23, 2004 application.  For this

9  reason, it is helpful to set forth the facts regarding the first search and related motion to

10  suppress as well.

11                                    **BACKGROUND**

12  **I.      German Investigation and Search of Kelley's AOL Account**

13        The charges against Kelley stem from two investigations of known child

14  pornographers: one local, one abroad.  The first occurred on November 11, 2003, when

15  German police executed a search warrant at Herbert Mumenthaler, a German citizen's

16  residence in Dusseldorf, Germany, resulting in the seizure of Mumenthaler's computers.

17  German authorities conducted a forensic examination of the computers and discovered

18  twenty-five outgoing emails and four hundred fifty incoming emails with attachments containing

19  child pornography.  Many of the email addresses found on Mumenthaler's computers

20  originated in the United States.  11/23/04 Affidavit in Support of Search Warrant at par. 5.

21        Among the emails discovered on Mumenthaler's computers, which originated in the

22  United States, were four containing the screen name "Gay1Dude."   Forensic analysis

23  "revealed that 'Gay1Dude' received four emails containing child pornographic attachments."

24  11/23/04 Affidavit in Support of Search Warrant at par. 8.  The four emails were sent to

25  "Gay1Dude" by senders with four different screen names, including "Krefi," "Xpicssix,"

26  "Picasso10532884," and "RIMMER1212," and each had attachments containing child

27  pornography.  However, as Kelley noted, three of the four emails inexplicably bore dates <u>after</u>

28

                                            2

United States District Court

For the Northern District of California

the date that Mumenthaler's computer was seized.[1]   The November 23, 2004 application provides no information as to where on Mumenthaler's computer the emails to "Gay1Dude" were in fact recovered -- in Mumenthaler's outgoing or incoming mail boxes, his trash bin or elsewhere or explaining how emails from senders other than Mumenthaler to "Gay1Dude" ended up on Mumenthaler's computer.

Subsequently, the German authorities forwarded a list of the email addresses originating in the United States and discovered on Mumenthaler's computer, to United States Immigration and Customs Enforcement ("ICE") in Frankfurt, Germany.  On June 25, 2004, approximately seven months after German authorities seized Mumanthaler's computers, Frankfurt ICE forwarded the information to ICE Cyber Crimes in Virginia.  On June 30, 2004, ICE issued a customs summons to AOL for subscriber information concerning 108 AOL screen names originating in the United States and discovered on Mumenthaler's computer.

On July 23, 2004, AOL returned to ICE the information requested in the customs summons regarding the screen names originating in the United States.  AOL confirmed that the screen name "Gay1Dude" was registered to defendant Kelley and was active.  It further provided seven additional screen names associated with Kelley's AOL account, and confirmed a recent login, from July 18, 2004, utilizing one of Kelley's screen names. Thereafter, on September 29, 2004, ICE agent and affiant, Michael Allen, confirmed that the credit card used to pay for the AOL account was owned by defendant Kelley.

On November 23, 2004, ICE agents obtained a search warrant from a magistrate judge for Kelley's AOL account associated with the eight screen names, which included 'Gay1Dude' and the seven additional screen names returned by AOL.  In January 2005, AOL returned information based on that warrant, which revealed more than 500 images of child

---

[1] The first email, sent by "Krefi" to "Gay1Dude" was dated October 26, 2003.  Two others, sent by "Xpicssix" and "Picasso10532884" were dated November 25, 2003, two weeks after the November 11, 2003 seizure of Mumenthaler's computer, and one more sent by "RIMMER1212" was dated November 27, 2003.

**United States District Court**
For the Northern District of California

pornography sent and/or received by Kelley. However, on June 17, 2005, this court

suppressed the evidence seized pursuant to the November 23, 2004 AOL search warrant.

**II.    Kansas Investigation and Search of Kelley's Residence and Computers**

Meanwhile, on September 10, 2004, a couple of months prior to the November

23, 2004 search of Kelley's AOL account, an investigation in Kansas targeted a known child

pornographer, Ronald D. Hutchings. As noted, the search of Hutchings' computer revealed

evidence implicating Kelley that appears nearly identical in nature to that recovered in the

German investigation. Specifically, agents recovered evidence that Kelley's AOL account,

with the screen name, K Michael Kelley, received five emails with thirty-eight attachments

containing child pornography. Again, like the German investigation, it is not clear where on

Hutchings' computer the emails were recovered -- in Hutchings' outgoing or incoming mail

boxes, in his trash bin or elsewhere. The emails were sent by an unidentified sender using

screen name "Badatt178." [2] The emails were received by Kelley's account on August 10 and

15, 2004, approximately six months prior to the search at issue now.

Subsequently, on February 9, 2005, a magistrate judge authorized a federal arrest and

search warrant for Kelley's residence and personal computer, the search at issue here.

Pursuant to the second warrant, agents seized Kelley's computer and additional child

pornography discovered at his residence.

**DISCUSSION**

**I.    Probable Cause**

The sworn affidavit in support of a search warrant must establish probable cause.

Fed.R.Crim.P. 41(d)(1). The test to be applied is whether, using common sense and

considering the totality of the circumstances, a magistrate judge can reasonably conclude that

---

[2]  It is important to note that there was no suggestion in the affidavit that this screen name belonged to Hutchings or in the prior affidavit that any of the four senders' screen names belonged to Mumenthaler. In fact the second affidavit asserts that Hutchings' screen name was "Youngbottom16" and treats "Badatt178" as belonging to someone else. Moreover, both the defendant and the court have presumed that the five screen names represent individuals other than the two known traffickers. The government has never argued nor is there any evidence to the contrary.

4

1   there is a "fair probability" that contraband or evidence of a crime will be found in the place to

2   be searched.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "[A] magistrate judge must look to

3   the totality of the circumstances to determine whether the supporting affidavit establishes

4   probable cause."  *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2003).

5        **II.     This Court's June 17, 2005 Order**

6        Because the reasoning pertaining to probable cause set forth in the court's prior order

7   is relevant to the court's discussion of probable cause with respect to the instant motion, the

8   court briefly reiterates its prior holding.

9        First, in the June 17, 2005 order, the court noted that there was no evidence at the time

10  the November 23, 2004 AOL search warrant was issued that demonstrated an "exchange" or

11  "trade" of child pornography between Kelley and Mumenthaler.  Rather the evidence showed

12  simply the *receipt* of four emails with attachments by Kelley's AOL account.  The government

13  knew only that the offending emails originating from as many as four other senders – whose

14  identities were unknown and who therefore were not "known" child pornographers, traders, or

15  traffickers – somehow "ended up" on Mumenthaler, an active trader's computer.  The

16  government has still provided no technical explanation for how this occurred.

17       This court, and the magistrate judge, were given no information regarding whether the

18  offending images were attached to emails from one of the four separate senders to

19  Mumenthaler with a copy to Kelley; whether the images were attached to emails from

20  Mumenthaler to one of the four senders with a copy to Kelley; whether the senders or

21  Mumenthaler forwarded emails received from each other to Kelley; or some other scenario

22  entirely.  This court found that what was lacking was "a direct connection between Kelly and

23  Mumenthaler, the known trafficker, which, had it existed and been presented to the magistrate

24  judge, could have provided sufficient indicia of probable cause."

25       Additionally, this court noted that there was no evidence before the magistrate judge

26  that the owners of the four email accounts that sent the offending attachments to Kelley were

27  themselves active traders or traffickers in child pornography, or that the four other senders

28

United States District Court

For the Northern District of California

5

United States District Court

For the Northern District of California

were connected to Mumenthaler, the known trafficker.  Very significantly, this court also noted

that there was no evidence that Kelley had even opened or downloaded the attachments to the

offending emails, or even opened the emails themselves for that matter.  As a result, this court

was persuaded by defense arguments that the evidence was consistent with Kelley having

been an unwitting recipient of the emails.  The court held that absent evidence that Kelley

solicited the emails or the attachments, or of a direct connection between Kelley and a known

child pornography trafficker, the mere receipt, without any evidence of opening or

downloading, by Kelley's email account of the four offending emails was not sufficient indicia

of his actual possession sufficient to support a finding of probable cause for the November 23,

2004 search warrant.

**III.    The Current Motion**

As this court noted on the record at the July 13, 2005 hearing, there are additional facts

associated with this motion that make this motion a closer call than the first and more troubling

for the court.  With the addition of the Kansas investigation, the court, and the magistrate judge

who approved the February 2005 search warrant, were presented with evidence linking

Kelley's email account to two different investigations on different continents, with two different

screen names belonging to Kelley which received the emails, and the receipt by Kelley's

account of a total of nine emails with offending attachments on two occasions approximately

ten months apart.  Additionally, the February 2005 affidavit contained information regarding

child pornographer typology, which was absent from the November 2004 affidavit.

Accordingly, at the hearing, the court stated that although the quality of the evidence in

support of the second warrant was the same as that for the prior warrant, the additional

quantity of that evidence diminished the strength of defendant's argument.  The fact that

Kelley's screen name was discovered in the course of not one – but now two – child

pornography investigations was significant because the more often that Kelley's screen name

appears on the computers of known pornography traffickers, the less likely it appears to the

court that his receipt of emails with pornographic attachments was unwitting or that the emails

**United States District Court**
For the Northern District of California

were unsolicited spam.  At the hearing the court queried the parties regarding how many such incidents were required to establish probable cause to search Kelley's home and personal computer.

The government contended that two investigations were enough to eliminate any inference of coincidence.  It argued that because of the clandestine manner in which the trading of child pornography usually occurs, the fact that Kelley's screen names had turned up in two investigations and had received a total of nine offending emails gave rise to a "fair probability" that evidence of a crime would be discovered in his residence and on his computers.  The defense couldn't provide an exact number but countered that two such incidents were not enough to give rise to probable cause to search his home in the absence of any evidence of intent to possess or solicitation of the child pornography by Kelley.

This case presents a question of first impression in that it requires a finding by this court as to the significance of the receipt by one's private email account of material the possession of which the law forbids, in essence, contraband.  Neither the parties nor this court have located any authority, Ninth Circuit or otherwise, concerning whether the receipt of contraband contained in an attachment to an email by one's private email account, without any evidence that the account holder solicited the materials or even opened either the email or the attachment, is sufficient to give rise to probable cause for the government to search one's residence and personal computer on the basis that there is "a fair probability that contraband or evidence of a crime" will be found at the particular location.  *See United States v. Hay*, 231 F.3d 630, 635 (9th Cir. 2000).

The cases in which the Ninth Circuit has found probable cause supporting a warrant to search for child pornography are factually distinguishable from this case because *all* contained some indicia of the defendant's intent to solicit or receive the material or his actual downloading of the offensive images.  *See, e.g., Hay*, 231 F.3d 630 (upholding search warrant where supporting affidavit established that defendant had actually received via direct digital transfer nineteen images of child pornography); *United States v. Lacy,* 119 F.3d 742 (9th Cir. 1997) (concluding that probable cause existed because there was sufficient evidence

United States District Court

For the Northern District of California

1   demonstrating defendant's actual possession of child pornography where affidavit stated that

2   defendant had actually downloaded at least two images); *see also United States v. Froman*,

3   355 F.3d 882, 890-91 (5th Cir. 2004) (defendant's  membership in website devoted

4   exclusively to child pornography, the primary purpose of which was to trade child pornography

5   among its members, combined with defendant's use of screen names "Littlebuttsue" and

6   "littletitgirly," which demonstrated interest in child pornography, gave rise to probable cause to

7   search defendant's home and computer).  Here, there was no such evidence of solicitation,

8   intent to possess, or interest in child pornography on Kelley's part presented in either warrant

9   application.

10       In its June 17, 2005 order, the court relied in part on the Ninth Circuit's holding in

11  *United States v. Gourde,* that the evidence underlying a search warrant must "draw [a] crucial

12  link between [the defendant's] having some attenuated connection to child pornography and

13  his actually possessing it."  382 F.3d 1003, 1010 (9th Cir. 2004) (concluding in a child

14  pornography case involving defendant's website subscription, that affidavit in support of

15  search warrant lacked sufficient indicia of probable cause because it contained no evidence

16  that defendant actually downloaded or otherwise possessed child pornography). However, just

17  days ago, on July 14, 2005, the Ninth Circuit withdrew its decision in *Gourde* for rehearing en

18  banc.  Accordingly, this court does not rely on *Gourde* in the present order, but does note that

19  the decision to suppress the fruits of the first warrant would have been the same had the court

20  not relied on *Gourd*e given the other authority cited above.

21       In this case, the pertinent information that the magistrate judge had before her in

22  support of the February 2005 search warrant, excluding the fruits of the January 2005 AOL

23  search suppressed by this court's prior order, included the following facts:  that German

24  authorities had searched a known trafficker, Mumenthaler's computer in November 2003 and

25  retrieved evidence of his possession of child pornography; that four emails with offending

26  images addressed to one of Kelley's screen names were somehow recovered on

27

28

United States District Court

For the Northern District of California

Mumenthaler's computer;[3] that Kelley utilized eight screen names in connection with his AOL account; that Kansas authorities had searched a known trafficker, Hutchings' computer in September 2004 and retrieved evidence of his possession of child pornography; that five emails with offending images addressed to one of Kelley's screen names were somehow recovered on Hutchings' computer; and that all five emails originated from a sender other than Hutchings for whom the government had a screen name but no additional information. Additionally, the magistrate judge also had information regarding the typology of child pornographers. However, significantly, none of the pertinent typology or technological information pertained specifically to private email accounts. Indeed it is puzzling that so much additional information was provided about the Internet and the world wide web, but none about what is at issue in this case – private email.

There are two interrelated issues that complicate the court's determination whether this evidence is sufficient to establish probable cause. First, the government did not provide to the magistrate judge and despite numerous requests has not provided to this court, any explanation, technical or otherwise, as to how or where the offending emails, originating with unidentified sources and addressed to Kelley's screen names, appeared on the two traffickers' computers. Second, there appears to be no authority, and the parties provided no argument, on the question whether email access should be treated differently than Internet access for purposes of analyzing actual possession.

In the cases cited above, *Hay*, *Lacy*, and *Froman*, the appellate courts' determinations turned, at least in part, on whether the warrant applications reflected that the defendants actually received the images (by downloading or transferring), or had demonstrated an interest in or an intent to solicit or receive child pornography. However, it is common knowledge that no volitional act is required by the owner of an email account for that account to receive emails, wanted or unwanted. Indeed, owners of email accounts have very few

---

[3]As the defense correctly notes, the government omitted information in the second affidavit that the four emails were sent to Kelley's screen name, "Gay1Dude," by senders with four different screen names, including "Krefi," "Xpicssix," "Picasso10532884," and "RIMMER1212" – for whom the government had no information.

**United States District Court**
For the Northern District of California

options available to prevent someone else from sending an unwanted email particularly if the other person has the owner's actual screen name.  Initially, the court was of the opinion that, at a minimum, the government would have to show that the opening of an email is the equivalent of downloading or transferring an image.  But proof that an email has been opened is not proof that an attachment has been opened.  Moreover, how many email account holders have unwittingly opened an email before discovering that something offensive and unwanted is contained inside?  Thus, something more than proof of receipt and proof of opening an email is required to establish probable cause that the recipient is in actual possession of contraband contained in an email attachment.  Anything less would mean that anyone's home and computer would be subject to search based solely on proof that someone else sent a contraband image to a particular screen name, without indicia that the owner of the screen name even wanted the contraband image and without indicia that the owner of the screen name ever opened the attachment containing the contraband image.

The court does not mean to suggest that the simple receipt of emails without more can never form the basis for probable cause to search someone's home and computer. Technology may exist which enables a forensic determination of more information than was presented here.  Additionally, other circumstances, like those reflected in the *Hay*, *Lacy* and *Froman* cases, may also demonstrate a suspect's interest in or solicitation of contraband images.  The court appreciates, as the government asserted, that evidence that a recipient opened an email or opened an attachment to an email will not necessarily be available <u>before</u> a search is authorized.  Similarly, evidence of a suspect's solicitation or interest in child pornography is difficult to detect in the absence of overt conduct like that reflected in the cases this court has cited previously.  Nonetheless, the additional challenges presented by email, do not, in this court's view, justify lowering the standard for probable cause.

The court's decision might be different if the court understood, technologically speaking, exactly what happened in this case.  But as previously stated, no explanation has been provided on how it is that Mumenthaler's computer in Germany and Hutchings' computer in Kansas contained forensic evidence establishing that five different unidentified senders

United States District Court

For the Northern District of California

sent emails with pornographic attachments to two screen names owned by Kelley. It does not appear that the emails originated with the known traffickers and no information is known about the actual senders. The court is unable to conclude, therefore, that there was a direct connection between Kelley and known child pornography traffickers, making evidence of his intent, or of his solicitation, or of his actual opening of the attachments, essential.

The court is aware that probable cause is not an exacting standard. However, it is more than a mere hunch. *See* LaFave, 2 Search & Seizure: A Treatise on the Fourth Amendment, § 3.2(e), at 89 (4th ed. 2004 & 2005 Suppl.) ("when the uncertainty is not about the location of evidence connected with a known crime, but rather as to whether such a crime has even occurred, then . . . a more than 50% probability should be required because of the risk that the privacy of innocent persons will be intruded upon"). In *United States v. Patacchia*, the Ninth Circuit noted the difficulties for a reviewing court regarding the probable cause determination. 602 F.2d 218, 220 (9th Cir. 1979). In that case, the court concluded that probable cause did not support the officer's determination to search the defendant's vehicle. It noted that:

> The issue is a close one, but its proper resolution, we believe, must be against the government. Each fact on which the government relies is not inconsistent with a criminal course of conduct; likewise, each is not inconsistent with an innocent one. What is lacking is the fact or two necessary to convert a strong hunch into probable cause. Not quite enough exists here to make an innocent course of conduct substantially less likely than a criminal one; less likely, perhaps, but not substantially less likely.

*Id.* (noting also that "it must be from time to time that what to an officer is probable cause is to us but a not unreasonable hunch").

Because the court concludes that probable cause to search Kelley's home and computer was lacking, it declines to reach the staleness issues raised in Kelley's second motion. Additionally, for the reasons stated in the June 17, 2005 order, the court likewise concludes that *Leon's* good faith exception does not apply.

### CONCLUSION

For the reasons set forth above, the court GRANTS Kelley's motion to suppress evidence obtained during the February 2005 search of his residence.

11

**IT SO ORDERED.**

Dated: July 22, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California